# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISALY'S, | Case No. 2:22-CV-810 |
| -and- | **COMPLAINT PURSUANT TO 7 USC § 2023(13) FOR A TRIAL DE NOVO AND REVIEW OF USDA DECISION** |
| RACHNA ANWAR, as Owner | |
| PLAINTIFFS, | |
| -v- | |
| UNITED STATES OF AMERICA, | |
| DEFENDANT. | |

Plaintiffs Isaly's (the "Store"), and Rachna Anwar, (the "Individual Plaintiff", and collectively, the "Plaintiffs") through their attorneys, Jeremy Feigenbaum, associate attorney with Spodek Law Group, P.C., respectfully alleges as follows:

## NATURE OF THE CLAIM

1. This is an action seeking and judicial review of an order (the "Order") from the Supplemental Nutrition Assistance Program ("SNAP") imposed by the Food and Nutrition Services ("FNS") disqualifying Plaintiffs from participating in the food stamp program for based on alleged violations of regulations prohibiting the sale of ineligible goods using SNAP benefits, asserting claims for a trial *de novo* of a final agency decision by the United States Department of Agriculture-FNS. *See,* Final Agency Decision ("FAD"), annexed hereto as **Exhibit A.**

2. Jurisdiction of this Court is invoked pursuant to 7 U.S.C. §§ 2011, et seq. and, more specifically, 7 U.S.C. § 2023(13).

3. The Store, which is the subject of the Order of the United States Department of Agriculture, is in the City of Pittsburgh, State of Pennsylvania, which is within the jurisdiction of the United States District Court for the Western District of Pennsylvania.

4. This Court is empowered to review the Order pursuant to 7 U.S.C. §

2

2023.

## THE PARTIES

5. Plaintiff Isaly's is a food market with a principal place of business in the State of Pennsylvania, City of Pittsburgh.

6. Individual Plaintiff Rachna Anwar is an individual who resides within the State of Pennsylvania, and is an owner of the Store.

7. Defendant United States of America (the "Defendant") is formed, maintains and controls the United States Department of Agriculture ("USDA" or "Agency" or, the "Department"), of which the Food and Nutrition Service is a subsidiary. The Food and Nutrition Service of the United States Department of Agriculture administers the Supplemental Nutrition Assistance Program by, in part, issuing Electronic Benefits Transfer (EBT) cards to eligible users who purchase eligible food items from retailers that the FNS authorizes as qualified SNAP participants. The retailer is reimbursed for each eligible EBT purchase.

## BACKGROUND
## FACTS

8. At all relevant times, the Store was an authorized participant in the Supplemental Nutrition and Assistance Program, administered by the USDA's Food and Nutrition Services.

9. After an investigation into the Store's compliance efforts during the period of July 27, 2021 through August 18, 2021, on or about December 7, 2021 the Agency sent a charge letter to Plaintiffs' asserting violations of SNAP regulations.

10. On or about December 16, 2021 Plaintiffs, without counsel, responded to the allegations in the Agency's Charge Letter, stating that Store ownership was shocked that this occurred and explained that it takes great care and many measures to ensure its employees are properly trained and supervised on all applicable SNAP regulations.

11. Additionally, Plaintiffs requested the issuance of a Civil Monetary Penalty ("CMP") in lieu of any period of disqualification, as disqualifying the Store would cause hardship to the surrounding community.

12. Plaintiffs further argued that Store ownership clearly was not careless in its supervision of its employees, a fact required to be present under the applicable regulations in order to be disqualified for the six-month period, as per 7 C.F.R. 278.6(e)(5). Again, Plaintiffs stated that it clearly had policies and programs in place to prevent violations of SNAP regulations by its employees, as demonstrated by the fact that Plaintiffs' employees refused to traffic SNAP

benefits, despite such a request by the Department's investigator.

13. On or about February 23, 2022, the Department issued a determination, suspending Plaintiffs from participation as an eligible SNAP retailer for a period of six-months as a result of the Agency's investigator allegedly purchasing minor goods which are ineligible for payment through the redemption of SNAP coupons and EBT cards.

14. Within days of receiving the Agency's initial determination, Plaintiffs, through counsel, requested administrative review of the initial Agency determination.

15. On or about April 5, 2022 Plaintiffs again responded to the charges as outlined by the Agency, contesting that a six-month period of disqualification would cause substantial, irreparable harm to the Store. Additionally, Plaintiffs' noted that the Store had never *once* been found in violation of any SNAP regulation. As such, the Store sought leniency and explained that Plaintiffs did not intend to commit any of the alleged violations of SNAP, and furthermore, Plaintiffs had in place policies and procedures to ensure that SNAP guidelines were followed.

16. In its April 5, 2022 submission, Plaintiffs further detailed all of their

efforts, and specifically the steps the Store and its ownership take to ensure compliance with all SNAP regulations. Plaintiffs detailed its compliance and training program, as well as statements from ownership, demonstrating that Store ownership/management is constantly on site to exercise proper supervision over employees. Plaintiffs further pointed out that the Agency's own Charge Letter detailed multiple instances where ineligible products were refused by the Store's clerks, as well as the complete refusal on multiple occasions to engage in any form of benefit trafficking, as the Agency's investigator attempted to induce, thus demonstrating the effectiveness of the steps taken by Store ownership to prevent violations of SNAP regulations and are thus, not careless.

17. Plaintiffs further reiterated that disqualifying the Store would cause undue hardship to the surrounding community, and requested issuance of a CMP.

18. On or about May 5, 2022 the Agency rendered its final decision, disqualifying the Store from participation in SNAP for six-months, and denied Plaintiffs' request for a civil monetary penalty. See, Ex. A.

19. The Department found as a fact that the items purchased by the FNS investigator during the violating transactions included a variety of items best described as 'common non-food items.'" *See,* Ex. A.

20. On each occasion that the investigator allegedly used an EBT card in a "sting" purchase of a common ineligible non-food item. *See*, Ex. A.

21. Neither prior to nor after the first such "sting" purchase, did the FNS send a warning letter as contemplated by 7 C.F.R. § 278.6(e)(7).

22. A six-month suspension will irreparably harm the Store as a portion of the Store's revenue comes from SNAP purchases, potentially causing the Plaintiffs to furlough employees and them unable to support their families. Additionally, as the Individual Plaintiff has operated the Store and is acutely aware that many individuals who purchase goods with SNAP will also be highly likely to purchase additional, non-SNAP eligible products, further adding to the impact a six-month disqualification will have upon the Store.

23. Pursuant to 7 C.F.R. § 278.6(d), FNS in determining the appropriate penalty shall consider (1) The nature and scope of the violations committed by personnel of the firm, (2) Any prior action taken by FNS to warn the firm about the possibility that violations are occurring, and (3) Any other evidence that shows the firm's intent to violate the regulations.

24. Plaintiffs has never been warned and never before been sanctioned for violation of SNAP laws or regulations. Plaintiffs has never been denied SNAP

payments or reimbursement based on any SNAP program violation. This fact, coupled with Plaintiffs averring that it has a training and compliance policy and program in place to prevent careless errors by its employees, and in addition to the fact that there is a manager or member of ownership is nearly always present, coupled with the refusal by Store employees to engage in benefit trafficking *and* their refusal on other occasions to allow the purchase of ineligible goods using SNAP, conclusively demonstrate that Plaintiffs never had *any* intent to violate the regulations.

25. However, in the instant matter, the FAD states, "[a] record of program participation with no documented previous violations, however, does not constitute valid grounds for dismissal of the current charges of violations or for mitigating the impact of those charges." This is completely in opposite to the plain meaning of what 7 C.F.R. 278.6(d)(3) imposes and directs the Agency to consider in arriving at its final determination, as an otherwise clean record clearly demonstrates that Store is taking steps to ensure compliance with SNAP regulations, and thus has demonstrated a lack of intent to violate the regulations.

26. Moreover, the FAD fails to take into account Plaintiffs statements regarding their training/compliance efforts, which ensure Plaintiffs' employees are

trained in accordance with all SNAP regulations.

27. Moreover, Plaintiffs are not aware, nor has he ever been notified or warned, of any irregularities in their compliance with SNAP laws or regulations that might warrant his store being targeted for a surreptitious investigation of his compliance.

28. At no time between the Store's inception and the date of the disqualification decision did the FNS Regional Office consider issuing a warning letter as required by 7 C.F.R. § 278.6(d)(2).

29. The Final Agency Decision did not find that the Regional Office complied with 7 C.F.R. § 278.6(d)(2) by considering prior efforts to warn Plaintiffs.

30. In fact, the FAD makes a statement <u>completely counter to what is stated in 7 C.F.R. 278.6(d)(2)</u> when the Agency stated, "<u>FNS did not consider prior actions to warn the Appellant</u>…"

31. In the words of Justice Cardozo, the word "shall" "is the language of command." *Escoe v. Zerbst*, 295 U.S. 490, 493 (U.S. 1935). The FAD's failure to consider the regional office compliance with 7 C.F.R. § 278.6(d)(2) cannot be excused as an agency's interpretation or application of its own regulation to which

the court must pay deference. "Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (U.S. 1988).

32. Furthermore, Plaintiffs had trained each of their employees not to permit any customer to improperly/unlawfully attempt to traffic SNAP benefits.

33. Each of the investigator's alleged EBT purchases occurred despite plaintiff's explicit instructions prohibiting any unlawful acts by Plaintiffs' employees.

34. By and through Plaintiffs training/compliance efforts as to its employees, Plaintiffs have demonstrated that they were not careless and in fact, take many steps to ensure that its employees abide by all SNAP regulations.

35. Plaintiffs also submitted documentation attesting to the fact that a member of ownership or management is nearly always on-site at the Store, thus demonstrating Plaintiffs do exercise proper supervision over its employees. However, the FAD fails to take any such statements into account.

36. The FNS made no specific findings as to carelessness or lack of supervision by Plaintiffs, nor did it make a finding with respect to other evidence demonstrating intent by the Store to violate SNAP regulations, and instead, made

generalized conclusory allegations as to Plaintiffs' carelessness. *See*, Ex. A. This is in violation of 7 C.F.R. §278.6(e)(5).

37. Astonishingly, the FAD explicitly states, "[r]egardless of who the store owner utilizes to handle store business, ownership is accountable for the proper handling of SNAP benefit transactions." Again, this is in direct contravention to the regulations, which specifically require the Agency to find that Store ownership or management was careless and exercised poor supervision in order to find Plaintiffs liable for the alleged violations.

38. Enforcement of the six consecutive months of disqualification from SNAP will wrongfully force Plaintiffs to sustain immediate and irreparable injury, loss and damage by directly depriving Plaintiffs of substantial portion of its gross revenues due to the loss of SNAP/EBT sales, as well as an unknown amount of additional revenue from by eligible SNAP participants who are drawn to the store by the availability of food bought with SNAP benefits, and who almost invariably make simultaneous purchases of non-food products with cash or credit cards.

39. Plaintiffs have exhausted its administrative remedies, are entitled to a judicial trial de novo of the administrative action, and seeks reversal of the finding of a SNAP violation and the disqualification of the Store from SNAP participation

# STATEMENT OF CLAIMS

## AS AND FOR A FIRST COUNT
**(For an Administrative Stay)**

40. Plaintiffs repeat, reiterate and reallege each and every allegation made in the foregoing paragraphs, as if fully set forth at length herein.

41. In order to obtain a stay of enforcement in this type of matter, Plaintiffs must demonstrate (i) irreparable harm and (ii) a likelihood of success on the merits.

42. Plaintiffs will suffer irreparable harm if forced to serve a period of disqualification.

43. As stated, *supra*, a significant portion of the Store's business is derived from the SNAP program.

44. As such, a period of disqualification is likely to cause the Store to lose substantial revenue, causing the Store to possibly furlough employees, as well as damage the surrounding community who will be unable to obtain comparable traditional Hispanic raw meats from other SNAP retailers in the surrounding area, thus causing irreparable harm not only to the Store and Individual Plaintiff, but also to the employees and customers as well.

45. As such, Plaintiffs will suffer irreparable harm.

46. Plaintiffs are also likely to succeed on the merits.

47. In this type of case, Plaintiffs are entitled to due process. The legal question is whether or not an employer may be deprived of a valuable property right (in this case his business). Additionally, if a plaintiff disputes the USDA's finding that it violated program regulations, the Food Stamp Act provides that a district court review the matter *de novo* to "determine the validity of the questioned administrative action." *Yafaie v. United States*, 1995 U.S. Dist. LEXIS 10022, 1995 WL 422169, at *1 (S.D.N.Y. 1995); *Altawel v. United States Dep't of Agric. Food & Nutrition Serv.*, No. 12-CV-6708, 2014 U.S. Dist. LEXIS 174933, at *7 (W.D.N.Y. Dec. 18, 2014)

48. When a plaintiff is going to be deprived of a significant portion of revenues, these revenues are considered a valuable property right. *Kim v. United States*, 822 F. Supp. 107, 109 (E.D.N.Y. 1993).

49. FNS violated its own regulations, 7 C.F.R. § 278.6(d)(2)-(3), which imposes a mandatory requirement that the FNS Regional Office making a disqualification or penalty determination consider prior action taken by FNS to warn the retailer about the possibility violations are occurring, as well as taking into account any other action by the Store demonstrating intent to violate SNAP

regulations. The FNS never considered this prior action, a fact explicitly stated by the Agency itself in the FAD, and in fact never warned plaintiff. These violations preclude FNS from imposing any penalty, including disqualification. Further, FNS never took into consideration any evidence on the part of the Store evincing a propensity or lack thereof with respect to violating SNAP regulations.

50. The finding by the FNS at the administrative review level illegally attempts to avoid a clear violation of section 278.6(d)(2)-(3) by completely failing to take into account any warning or lack thereof and attempts to white-wash misconduct by both the investigator and the FNS Regional Office, as well as any evidence demonstrating an intent to violate SNAP regulations, as required by 7 C.F.R. § 278.6(e)(5).

51. As such, since Plaintiffs will suffer irreparable harm and are likely to succeed on the merits, an administrative stay of the permanent disqualification is warranted.

**AS AND FOR A SECOND COUNT**
**(For Judicial Review of the Order and Trial *de novo*)**

52. Plaintiffs repeat, reiterate and reallege each and every allegation made in the foregoing paragraphs, as if fully set forth at length herein.

53. Under the laws governing the Act, a plaintiff is usually entitled to a

trial *de novo* by a court to "determine the validity of the questioned administrative action" as well as a trial *de novo* of whether the FNS followed the Act and regulations in finding a violation resulting from carelessness or poor supervision, whether the Department considered any prior warnings to the Store, and whether FNS decision to impose said penalty was arbitrary and capricious. *See*, 7 U.S.C. § 2023.

54. FNS violated its own regulations, 7 C.F.R. § 278.6(d)(2)-(3), which *inter alia* imposes a mandatory requirement that the FNS Regional Office making a disqualification or penalty determination consider prior action taken by FNS to warn the retailer about the possibility violations are occurring. The FNS never considered this prior action, nor did the Agency consider the intent of Plaintiffs to violate the regulations.

55. FNS further violated its own regulations by making conclusory findings as to any carelessness by the Individual Plaintiff, without any actual evidence other than the Agency's own surmise and conjecture, in violation of 7 C.F.R. 278.6(e)(5).

56. Additionally, FNS arbitrarily and capriciously denied Plaintiffs' request for a CMP, and based said refusal on conclusory allegations.

57. Pursuant to 7 C.F.R. §§ 2023(13) and 2023(15), Plaintiff is entitled to a trial *de novo* on whether he violated a provision of the Act or a regulation under the Act, including trial *de novo* of whether the FNS followed the Act and regulations in finding the violation occurred as alleged.

58. Plaintiffs have been aggrieved by the determination of the USDA and aver that the agency's findings are unsupported by reliable probative evidence and are otherwise the product of unlawful agency action.

59. As such, the Order should be extinguished.

60. Plaintiff respectfully requests that the court vacate the Final Agency Decision and immediately reinstate Plaintiffs as a SNAP participant, because:

- The FNS violated its own regulations and thus cannot impose any sanction;
- FNS has acted arbitrarily and capriciously and violated its own regulations in imposing a penalty of disqualification;
- The six-month disqualification will cause hardship to SNAP recipients in the area surrounding the plaintiffs' store.

61. Alternatively, the Court should either: find no sanction appropriate, but direct issuance of a written warning; or reduce the disqualification to a reasonable civil money penalty.

62. No prior relief has been requested.

# **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

A. A stay of the disqualification ordered by USDA; and

B. *De novo* review of the Order and the subsequent extinguishment thereof; or

C. Extinguishment of the Order as FNS has acted arbitrarily and capriciously and violated its own regulations in imposing a penalty of a six-month disqualification without properly considering all statutory factors; and

D. An Order finding that FNS has acted arbitrarily and capriciously in denying Plaintiffs' request for a CMP, and that FNS should issue the CMP in lieu of disqualification; and

E. Ordering Defendant to make whole Plaintiffs who lost revenues by not being able to collect monies through the SNAP program; and

F. Order Defendants to reimburse Plaintiffs for all costs and fees associated with the commencement and prosecution of this lawsuit; and

G. Grant such further relief as this Court deems necessary and proper in the public interest.

# **JURY TRIAL DEMAND**

Plaintiffs request a jury trial on all questions of fact raised by their complaint.

Dated: New York, NY
June 2, 2022

**SPODEK LAW GROUP, P.C.**

BY: Jeremy G. Feigenbaum, Esq.
*Attorney for Plaintiffs*
*Pro Hac Vice Application Pending*
85 Broad Street, 17th Floor
New York, NY 10004
(347) 292-8630
New York Bar No. 5173620

1
2

19